# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| RICHARD DIETER, individually and on behalf of all others similarly situated, | ) ) ) |
| Plaintiff, | ) CIV. ACTION NO. 2:18-00846 ) ) |
| v. | ) ) |
| ALDI, INC., | ) ) |
| Defendant. | ) ) |

## MEMORANDUM OPINION

Pending before the court in this class action filed under Title III of the Americans with Disabilities Act, 42 U.S.C. § 12101, et seq., is a motion to dismiss and/or strike class allegations. (ECF No. 16.) For the reasons set forth in this memorandum opinion, the amended class action complaint (ECF No. 13) sets forth sufficient class allegations to proceed to discovery. The motion to dismiss and/or strike class allegations will be denied.

### I.   Background

Plaintiff Richard Dieter ("plaintiff") filed an amended class action complaint, individually and on behalf of all others similarly situated, under Title III of the Americans with Disabilities Act, 42 U.S.C. § 12101, et seq. ("ADA"), against Aldi, Inc. ("Aldi"). (Am. Class Action Compl., ECF No. 13.) Aldi filed the pending motion to dismiss and/or strike class allegations with an accompanying brief in support of the motion. (ECF Nos. 16, 17.) Plaintiff filed a response and brief in opposition to the motion. (ECF Nos. 22, 23.) On November 2, 2018, Aldi with leave of court filed a reply in support of its motion. (ECF No. 27.) The motion having been fully briefed is now ripe for disposition by the court.

For the purposes of deciding the motion, the court accepts as true the factual allegations in plaintiff's amended class action complaint. Plaintiff, a resident of Pennsylvania, has a mobility disability and is dependent upon a wheelchair for mobility. (ECF No. 13 ¶¶ 2, 20.) Aldi is a corporation organized under Illinois law and a public accommodation pursuant to 42 U.S.C. § 12181(7). (Id. ¶¶ 21–22.)

Plaintiff visited Aldi's Allison Park, PA, location within the last year and experienced unnecessary difficulty and risk due to excessive slopes in a purportedly accessible parking space and other ADA accessibility violations. (Id. ¶ 23.) Aldi operates over 1,600 stores in 35 states and "corporately" manages all the facilities. (Id. ¶¶ 30–31.) Aldi uses centralized policies, practices, and procedures with respect to the design, construction, alteration, maintenance, and operation of its facilities. (Id. ¶ 32.) Plaintiff alleges that Aldi's "centralized design, construction, alteration, maintenance and operational policies and practices have systematically and routinely violated the ADA." (Id. ¶ 33.)

Plaintiff's investigators examined six Aldi facilities in Pennsylvania, North Carolina, and Ohio and discovered that the surfaces of one or more purportedly accessible parking spaces at each facility had slopes exceeding 2.1%. (Id. ¶ 34.) In addition, two of the facilities also had the sloped surfaces of access aisles[1] exceeding 2.1%. (Id.) Plaintiff alleges that Aldi systematically discriminated against individuals with mobility disabilities by implementing centralized policies and practices that consistently violate the ADA's accessibility guidelines and routinely result in access barriers at Aldi's facilities. (Id. ¶¶ 4, 33.)

---

[1] As the Third Circuit Court of Appeals explained in Mielo v. Steak 'n Shake, "[a]n 'access aisle' is a designated area located adjacent to an accessible parking space." 897 F.3d 467, 474 n.1 (3d Cir. 2018). It is "that dash line that people love to park in when they shouldn't . . . it's that area, you know, for ramps or for doors to open, things like that." Id.

2

The amended class action complaint describes the nationwide class as:

> All persons with qualified mobility disabilities who, due to Defendant's failure to comply with the ADA's accessible parking and path of travel requirements, have experienced or will experience slope-related injuries that occur within the parking facilities at all locations within the United States for which Defendant owns and/or controls the parking facilities.

(Id. ¶ 39.) Plaintiff asserts class claims for a permanent injunction pursuant to Federal Rule of Civil Procedure 23(b)(2) to remove the barriers currently present at Aldi's facilities and an injunction to modify the policies and practices that have created or allowed inaccessibility to affect Aldi's network of facilities. (Id. ¶ 38.)

## II. Standard of Law[2]

The Supreme Court of the United States has recognized that with respect to class certification under Federal Rule of Civil Procedure 23, "[s]ometimes the issues are plain enough from the pleadings to determine whether" class certification is appropriate in a given case. Gen. Tel. Co. of the Sw. v. Falcon, 457 U.S. 147, 160 (1982). The Third Circuit Court of Appeals has explained that in "rare" cases, "where the complaint itself demonstrates that the requirements for maintaining a class action cannot be met," a court may strike class allegations contained in a complaint. Landsman & Funk PC v. Skinder-Strauss Assocs., 640 F.3d 72, 93 n.30 (3d Cir. 2011)

---

[2] In the briefings, the parties spar on the appropriate legal standard. Aldi confusingly entitled its motion, "Motion to Dismiss and to Strike Class Allegations;" yet, in the motion, Aldi requests that the court "strike [plaintiff's] class allegations." (ECF No. 16, at 1.) In the motion itself, Aldi cites to Federal Rule of Civil Procedure 23(a) and makes no reference to Rule 12(b)(6). Based on the relief sought (striking the class allegations) and the reference to Rule 23 (as opposed to Rule 12(b)(6)), the court construes this as a motion to strike the class allegations pursuant to Rule 12(f) and Rule 23 and not a motion pursuant to 12(b)(6). See Trunzo v. Citi Mortg., No. 2:11-cv-01124, 2014 U.S. Dist. LEXIS 43056, at *54–55 (W.D. Pa. Mar. 31, 2014) (construing motion for judgment on the pleadings as a motion to strike based on the relief sought). Indeed, in its brief in support, Aldi sets forth the legal standard for Rule 12(f) in the context of striking class allegations, making no reference to Rule 12(b)(6). Only in its reply does it argue that plaintiff's "nation-wide policy" theory fails to satisfy Iqbal or Twombly.

3

(citing Rios v. State Farm Fire & Cas. Co., 469 F. Supp. 2d 727, 740 (S.D. Iowa 2007)). In Landsman, the appellate court noted, however, that in all other cases (the majority of cases) "[t]o determine if the requirements of Rule 23 have been satisfied, a district court must conduct a 'rigorous analysis.'" Landsman, 640 F.3d at 93 (quoting In re Hydrogen Peroxide Antitrust Litig., 552 F.3d 305, 309 (3d Cir. 2008)). The court of appeals explained:

> In [conducting a rigorous analysis], a "court may 'delve beyond the pleadings to determine whether the requirements for class certification are satisfied.'" In re Hydrogen Peroxide, 552 F.3d at 316 (quoting Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 259 F.3d 154, 167 (3d Cir.2001)). . . . In most cases, some level of discovery is essential to such an evaluation. In Weiss v. Regal Collections, 385 F.3d 337 (3d Cir.2004), we emphasized the importance of discovery as part of the class certification process. "It seems appropriate," we said, "that the class action process should be able to 'play out' according to the directives of Rule 23 and should permit due deliberation by the parties and the court on the class certification issues." Weiss, 385 F.3d at 347-48 (footnote omitted). Accordingly, "[a]llowing time for limited discovery supporting certification motions may . . . be necessary for sound judicial administration." Id. at 347 n. 17. These concerns were the basis for setting down a "rigorous analysis" requirement in Hydrogen Peroxide, where we recognized that changes in Rule 23 reflected the need "for a thorough evaluation of the Rule 23 factors." In re Hydrogen Peroxide, 552 F.3d at 318.

Landsman, 640 F.3d at 93.

The court must be cognizant when evaluating a defendant's motion to strike class allegations from a complaint that "'[a]n order granting a motion to strike class allegations is tantamount to a denial of class certification after a motion to certify.'" Smith v. Merial Ltd., No. 10-cv-439, 2012 WL 2020361, at *6 (D.N.J. June 5, 2012) (quoting 1 Joseph M. McLaughlin, McLaughlin on Class Actions § 3:4 (10th ed. 2013)). "[T]he burden remains with the party seeking class certification regardless who moves the court to make the determination." Blihovde v. St. Croix Cty. Wis., 219 F.R.D. 607, 614 (W.D. Wis. 2003). Regardless whether a defendant files a motion to strike class allegations pursuant to Rule 12(f) based upon insufficient class allegations in a complaint, or a plaintiff files a motion to certify a class pursuant to Rule 23 based upon a more

4

fully developed record, the plaintiff has the burden to prove that the requirements set forth in Rule 23 are met, and the court must accordingly apply Rule 23. In re Cmty. Bank of N. Va., 622 F.3d at 302 n.19; 1 McLaughlin, supra, § 3:4. It would be error for a court to apply the Rule 12(b)(6) plausibility standard set forth in Twombly and Iqbal to "dismiss" class action allegations in a complaint. In re Cmty. Bank of N. Va., 622 F.3d at 302 n.19. The Third Circuit Court of Appeals recognized in In re Hydrogen Peroxide, that "the requirements set out in Rule 23 are not mere pleading rules." In re Hydrogen Peroxide, 552 F.3d at 316.

At this stage in the case, because there is no factual record, "[w]hen evaluating a motion to strike allegations of a complaint, the court must accept as true all factual allegations in the complaint and view all reasonable inferences in the light most favorable to Plaintiffs, just as on a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6)." Durso v. Samsung Elecs. Am., Inc., No. 2:12-cv-05352, 2013 U.S. Dist. LEXIS 160596, at *8 (D.N.J. Nov. 6, 2013).

Based upon the foregoing discussion, Aldi may challenge plaintiff's class action allegations at this stage of the proceedings, i.e. the pleading stage. If this is one of the "rare" cases in which it is "plain enough from the pleadings" that plaintiff cannot sustain its burden to show class treatment is appropriate in this case under Rule 23, plaintiff will not be permitted to proceed with his class action allegations and they will be stricken from the amended complaint. Falcon, 457 U.S. at 160; Landsman, 640 F.3d at 93 n.30.

### III. Discussion

#### A. Applicable Law: Rule 23

"The class action is 'an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only.'" Comcast Corp. v. Behrend, 569 U.S. 27, 33 (2013). In order to become certified, a class must satisfy the four requirements of Rule 23(a): (1)

5

numerosity; (2) commonality; (3) typicality; and (4) adequacy of representation. Fed. R. Civ. P. 23(a). In addition to satisfying the four requirements set forth in Rule 23(a), the class must fit within one of the three types of class actions set forth in Rule 23(b). Mielo v. Steak 'n Shake Operations, Inc., 897 F.3d 467, 482 (3d Cir. 2018). Plaintiff's amended class action complaint pleads his class claims pursuant to Rule 23(b)(2) (ECF No. 13 ¶ 9), but Aldi only challenges the sufficiency of the class allegations with respect to three of the four Rule 23(a) factors. Therefore, the court will not discuss the additional Rule 23(b)(2) factor: whether "final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2).

The court's Rule 23 analysis is "rigorous." Steak 'n Shake, 897 F.3d at 483. The court addresses each challenged requirement in turn.

### B. Rule 23(a)(2) Commonality Analysis

"Commonality requires the plaintiff to demonstrate that the class members 'have suffered the same injury.'" Wal-Mart Stores, Inc. v. Dukes, 564 U.S. 338, 349–50 (2011) (quoting Falcon, 457 U.S. at 157). Both the Supreme Court and the Third Circuit Court of Appeals have stressed that suffering a violation of the same provision of law is insufficient alone to establish commonality. Dukes, 564 U.S. at 349; Steak 'n Shake, 897 F.3d at 487–89.

Aldi makes several arguments with respect to commonality. First, Aldi argues that a putative class that groups together those who experienced excessive slopes in parking spaces and those who experienced excessive slopes in access aisles cannot satisfy the commonality requirement because the putative class is inherently too broad. To support this argument, Aldi relies exclusively on the Third Circuit Court of Appeal's recent decision in Steak 'n Shake, 897 F.3d 467. Plaintiff argues that Aldi misconstrues Steak 'n Shake and that courts have allowed these

6

putative class actions to proceed to discovery. Second, Aldi makes a broader argument that slope-related ADA violations should not be litigated through nation-wide class actions because (a) the ADA applies different rules depending on when a particular facility was built; (b) facility-specific inquiries will overcome any common corporate "policies and practices"; and (c) even if there could be sufficient corporate "policies and practices" that violate the ADA such that commonality could be met, plaintiff fails to plead sufficiently its existence in this case.

### 1. Whether <u>Steak 'n Shake</u> bars this class action

In <u>Steak 'n Shake</u>, an appeal of the district court's grant of a motion for class certification, the class was defined as:

> All persons with qualified mobility disabilities who were or will be denied the full and equal enjoyment of the goods, services, facilities, privileges, advantages or accommodations of any Steak 'n Shake restaurant location in the United States on the basis of a disability because such persons encountered accessibility barriers at any Steak 'n Shake restaurant where Defendant owns, controls and/or operates the parking facilities.

897 F.3d at 487–88. The Third Circuit Court of Appeals concluded that the plaintiff failed to show commonality because the class description covered experiences of ADA violations within the parking facility but also covered experiences with accessibility barriers elsewhere on the premise, such as in the bathroom. <u>Id.</u> at 488. In other words, "the potential universe of ADA violations covered by this broad class definition" was too large to conform with the Supreme Court's guidance in <u>Dukes</u>, which emphasized that class claims "must depend upon a common contention" that is "of such a nature that it is capable of classwide resolution." <u>Id.</u> at 489 (quoting <u>Dukes</u>, 564 U.S. at 349–50).

The appellate court went further, contemplating an ADA class that was limited to those who suffered injuries within the parking facilities but noted that even that limitation would likely

7

fail to pass Rule 23(a)(2) scrutiny because "there are still various kinds of ADA violations that could occur specifically in a parking facility." Id. at 490. Indeed, many different kinds of ADA violations can occur in parking lots, ranging from slope issues to problems with parking signage and designations. Id. Even slope-related violations comprise different categories: parking space slopes, access aisle slopes, slopes relating to the route leading to a facility entrance, and "curb ramp" slopes. Id. Noting the broad range of violations that could occur in a parking lot, Steak 'n Shake concluded that the different categories of violations "harm class members in materially different ways." Id. To illustrate, the appellate court contrasted an injury related to signage and an injury related to sloping. Id.

Aldi argues that the putative class here captures those different categories of slope-related injuries, and those different categories are too uncommon to one another to satisfy Rule 23(a)(2). Plaintiff points to a footnote in Steak 'n Shake: "it seems to us that a class definition limited to *slope-related injuries* occurring *within a parking facility* would present a class definition much more likely to meet the commonality requirement of Rule 23(a)(2)." Steak 'n Shake, 897 F.3d at 490 n.23) (emphasis added).

Aldi is correct that there are different categories of slope-related ADA violations that can occur in parking facilities and that the class description before the court captures them. Given the court of appeals' guidance in Steak 'n Shake, however, the court cannot conclude that commonality is plainly lacking. The Third Circuit Court of Appeals clearly articulated that a class definition "with a limited number of potential ADA violations" would likely survive a commonality challenge. Steak 'n Shake, 897 F.3d at 491. The court of appeals suggested that a class comprised of slope-related injuries within parking facilities suffices, and the court was well-aware that slope-related injuries included at least parking space slopes and access aisle slopes. 897

F.3d at 491. Therefore, the court of appeals' guidance in Steak 'n Shake contradicts Aldi's statement that "[a]n individual experiencing an excessive slope in a parking space encounters a different type of alleged harm than someone experiencing an excessive slope in an access aisle [in a parking facility." (ECF No. 17, at 7.) Discovery may ultimately support Aldi's argument that these two specific "slope" categories lack commonality, but success would depend on the facts.

### 2. Whether slope-related ADA violations can be litigated through a nation-wide class action

Aldi argues that because class actions alleging slope-related ADA violations are inherently not susceptible to class certification, the class claims should not be able to proceed. To support this argument, Aldi cites to Mielo v. Bob Evans Farms, Inc., No. 14-cv-1036, 2015 U.S. Dist. LEXIS 36905 (W.D. Pa. Mar. 23, 2015). Bob Evans predates Steak 'n Shake. Had the Third Circuit Court of Appeals sought to bar or even caution against slope-related ADA class actions, it likely would not have analyzed the class description to the extent that it did, and it likely would not have remanded the case back to the district court to "determin[e] the proper boundaries of a revised class definition." Steak 'n Shake, 897 F.3d at 490 n.22.

Bob Evans is also distinguishable on the basis that it addressed a motion for class certification, relying heavily on the factual record to support its holding that commonality had not been satisfied because the parking lots did not share a common design. 2015 U.S. Dist. LEXIS 36905, at *17. Such factual determinations cannot yet be made in this case. In Bob Evans, the court also noted that there were differences in applicable law that would require location-specific inquiries, such as the applicable law for older facilities and newer facilities. Id. at *19 (citing 28 C.F.R. §§ 35.150(b)(1), 35.151, 36.304(a), 36.401(a)(1)). Although Aldi is correct that the applicable ADA law may vary for different Aldi facilities based on when facilities were built, it is too soon to tell whether that problem will be a problem in this case, because the pleadings are

9

silent about when the Aldi locations were built. For the court to conclude that Aldi's locations are too different from one another prior to discovery would be a factual finding that simply cannot be inferred from the pleadings.

Aldi points out that other out-of-circuit district courts have relied on the Bob Evans analysis on motions to strike, but these cases are also distinguishable. In Timoneri v. Speedway, LLC, the district court struck class allegations with respect to all Speedway locations that the plaintiff had not visited because commonality was not satisfied. 186 F. Supp. 3d 756, 763–64 (N.D. Ohio 2016). The decision in Timoneri predates Steak 'n Shake, and its commonality analysis is distinguishable on the basis that the putative class in Timoneri included slope-related violations *and* other parking lot violations (e.g. signage and designation violations).

Aldi also cited to Castaneda v. Burger King Corp., 264 F.R.D. 557, 569 (N.D. Cal. 2009), for the premise that it is "impossible" to certify a nationwide class of 1,600-plus stores, but Castaneda addressed locations with a broad spectrum of violations, similar to Steak 'n Steak. 264 F.R.D. at 569 ("One might have a door pressure violation, another a mirror-placement fault, another a ramp angle correction, another a path-of-travel violation—or perhaps all of these violations would occur at some other locations."). Because the putative class in this case is limited to alleged slope-related violations in parking lots, the concern about different species of violations is not sufficiently present here to strike the class allegation prior to discovery.

### 3. Whether there are sufficient allegations of a corporate common policy

Aldi argues that plaintiff's allegations about the existence of a common policy or practice are "wholly conclusory" and "not sufficient to survive a motion to dismiss." (ECF No. 17, at 10.) Plaintiff's amended class complaint alleges that Aldi "implements policies and practices that routinely result in accessibility violations" based on the factual allegation that six locations (four

10

in Pennsylvania, one in North Carolina, and one in Ohio) have "surfaces of one or more purportedly accessible parking spaces and slopes exceeding 2.1%" and two locations (one in North Carolina and one in Pennsylvania) have "surfaces of one or more access aisles [with] slopes exceeding 2.1%." (ECF No. 8 ¶ 34.) Plaintiff further alleges that Aldi utilizes "corporate divisions" to design and construct the facilities, which in turn uses "centralized policies, practices and procedures with regard to design, construction, alteration, maintenance and operation of its facilities." (ECF No. 13 ¶¶ 32, 33.)

Aldi's motion is not one brought pursuant to Rule 12(b)(6) because it seeks "to strike [plaintiff's] class allegations" pursuant to Rule 23. (ECF 16, at 1.) As the court explained in the standard of law, when a defendant challenges the sufficiency of Rule 23(a) allegations at the pleadings stage, a mere Twombly and Iqbal analysis is inapplicable. See Cole's Wexford Hotel, Inc. v. UPMC, 127 F. Supp. 3d 387, 404 (W.D. Pa. 2015) ("It would be error for a court to apply the Rule 12(b)(6) plausibility standard set forth in Twombly and Iqbal to 'dismiss' class action allegations in a complaint." (citing In re Cmty. Bank of N. Va., 622 F.3d at 302 n.19.)). In this circuit, "class allegations [are] stricken prior to a motion for certification only when class certification is a clear impossibility." 5C Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1383 (3d ed. 2018).

To support this "sufficiency" argument, Aldi relies on case law discussing standing, specifically cases where a named plaintiff alleges violations at facilities to which he has not personally visited. King v. O'Reilly Auto., Inc., No. 2:15-cv-230, 2016 U.S. Dist. LEXIS 28094 (E.D. Wash. Mar. 4, 2016); Timoneri, 186 F. Supp. 3d at 758.

In King, the court concluded that the complaint failed to show a "common policy or architectural design" to give the plaintiff standing on a class-wide basis because the pleaded

11

examples of violations at 11 locations "appear[ed] to follow a pattern as they mostly relate[d] to the slope of the ground . . . but the different allegations vary sufficiently to undermine an allegation of a 'common policy or architectural design.'" 2016 U.S. Dist. LEXIS 28094, at *8. In Timoneri, the court concluded that "the variety of examples of noncompliance that plaintiff alleges at the 18 properties visited by investigators undermines plaintiff's allegation that Speedway adhered to such a common policy or practice." 186 F. Supp. 3d. at 761. As a result, the plaintiff in Timoneri did not have standing to sue on a class-wide basis. Id. at 762.

When a defendant challenges "a plaintiff's class allegations as unsustainable under Federal Rule of Civil Procedure 23, 'the court must accept as true all factual allegations in the complaint and view all reasonable inferences in the light most favorable to Plaintiffs.'" Sanchez v. Santander Bank, N.A., No. 17-cv-5775, 2018 U.S. Dist. LEXIS 36868, at *7 (D.N.J. Mar. 6, 2018) (quoting Andrews v. Home Depot U.S.A., Inc., No. 03-5200, 2005 U.S. Dist. LEXIS 44304 at *7 (D.N.J. June 20, 2005)). The question becomes whether, at this stage in the case, a plaintiff can advance to discovery on putative class claims alleging a common corporate policy encompassing up to 1,600 stores on the basis that six of six locations show the same alleged accessible parking space violation and two of six locations additionally show an alleged access aisle violation.

In answering this question, the court bears several legal principles in mind. First, "the shape and form of a class action evolves only through the process of discovery." Gutierrez v. Johnson & Johnson, Inc., No. 01-5302, 2002 U.S. Dist. LEXIS 15418, *16 (D.N.J. 2002). Second, it is for that reason that the Third Circuit Court of Appeals has recognized that dismissal of a class claim on the basis of its pleading is "rare." Landsman, 640 F.3d at 93 n.30. While a Rule 12(b)(6) challenge looks to plausibility, a Rule 12(f) motion to strike class claims looks to whether "the requirements for maintaining a class action *cannot* be met." Id. (emphasis added).

12

In its reply, Aldi argues that "if pleading a handful of alleged violations at a few stores were enough to show a company-wide policy of ADA-noncompliance, then every ADA accessibility case could automatically be turned into a class action." (ECF No. 27, at 4.) Aldi overstates the significance of the motion to strike and ignores the significance of the motion for certification. "Certification of a class is perhaps the most pivotal moment in the life of a class action." Steak n' Shake, 897 F.3d at 490 n. 22. "If a class is defined too broadly, the time to correct the flaw is at the time of certification, or soon thereafter." Id.

Only discovery will uncover whether the common violation actually derives from a common policy. Unlike both King and Timoneri, *each* facility investigated shares an identical trait, and plaintiff alleges that the design and construction of individual locations are "centralized." (ECF No. 13 ¶¶ 32, 33.) It may prove difficult to certify a nationwide class of up to 1,600 stores, but the court cannot conclude that the complaint itself demonstrates that it cannot be done.

## C. Rule 23(a)(3) Typicality Analysis

"The concepts of typicality and commonality are closely related and often tend to merge." Marcus v. BMW of N. Am., LLC, 687 F.3d 583, 597 (3d Cir. 2012) (citing Baby Neal v. Casey, 43 F.3d 48, 56 (3d Cir. 1994)). They tend to merge because "[b]oth serve as guideposts for determining whether under the particular circumstances maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." Id. at 597–98 (citing Falcon, 457 U.S. at 158 n.13).

Typicality, specifically, is designed "to screen out class actions in which the legal or factual position of the representatives is markedly different from that of other members of the class even though common issues of law or fact are present." Id. at 598 (quotation and citation omitted). Typicality "ensur[es] that the class representatives are sufficiently similar to the rest of the class—in terms of their legal claims, factual circumstances, and stake in the litigation--so that certifying those individuals to represent the class will be fair to the rest of the proposed class." In re Schering Plough Corp. ERISA Litig., 589 F.3d 585, 597 (3d Cir. 2009). While commonality evaluated the sufficiency of the class, typicality evaluates the sufficiency of the named plaintiff. Baby Neal, 43 F.3d at 56.

To determine whether there is typicality, courts focus on three concerns:

> (1) The claims of the class representative must be generally the same as those of the class in terms of both (a) the legal theory advanced and (b) the factual circumstances underlying that theory; (2) the class representative must not be subject to a defense that is both inapplicable to many members of the class and likely to become a major focus of the litigation; and (3) the interests and incentives of the representative must be sufficiently aligned with those of the class.

In re Schering Plough, 589 F.3d at 599. Aldi address only the first concern, repeating its commonality argument that plaintiff's failure to plead adequately the existence of a common

14

design or architectural feature in Aldi's parking lots is also fatal to plaintiff's ability to show typicality. Despite Aldi's argument that the theory of the case will not be sufficiently supported by the facts, plaintiff's legal theory is one that would also apply to the class. Plaintiff's legal theory is that Aldi's common parking facility scheme results in common violations with respect to slope-related violations, causing injuries to persons with qualified mobility disabilities. At this juncture, plaintiff's claims are sufficiently the same as those of the class in terms of legal theory advanced to survive the motion to strike.

With respect to the factual circumstances underpinning plaintiff's individual claim and those of the class, the amended class complaint shows differences among plaintiff's experience, the alleged findings of the investigation, and the class description. In the amended class action complaint, plaintiff asserts that he experienced a violation with respect to excessive sloping in an accessible parking space. The investigations of the other locations revealed two kinds of slope-related violations: slopes of accessible parking spaces and slopes of access aisle, unlike plaintiff's experience. The class description captures all "slope-related injuries that occur within the parking facilities," incorporating not just sloping violations with respect to parking spaces and access aisles but also the sloping of routes leading to a facility entrances and curb ramps. See Steak 'n Shake, 897 F.3d at 490.

Plaintiff, who experienced parking space sloping violations seeks to represent a class that could include individuals who experienced up to three other kinds of slope-related access barriers, and there is no requirement in the putative class description that class members share a similar injury or damage. As pled, the factual circumstances of plaintiff's experience underlying the theory is narrower than the class pled, with the alleged violations of the investigated facilities lying somewhere in between.

15

On the other hand, "factual differences will not render a claim atypical if the claim arises from the same event or practice or course of conduct that gives rise to the claims of the class members, and if it is based on the same legal theory." Baby Neal, 43 F.3d at 58 (quoting Hoxworth v. Blinder, Robinson & Co., 980 F.2d 912, 923 (3d Cir. 1992)). Contrary to the position of Aldi, the Supreme Court, in Falcon, rejected "the proposition that a named plaintiff complaining of one specific injury (Falcon's not being promoted) cannot represent a class suffering perhaps a different injury (not being hired)," and instead instructed that a representative plaintiff is required to "prove that there is a pervasive violation and that the various injuries alleged all stem from that common violation." Baby Neal, 43 F.3d at 58 (discussing Falcon, 457 U.S. at 157–159).

Discovery may show that various slope-related injuries all stem from a common violation, and the factual differences among putative class members' experiences do not destroy typicality. Indeed, even at the certification phase, "[t]o the extent that some of the claims raised by the plaintiffs truly do require the court to engage in individualized determinations, the court retains the discretion to decertify or modify the class so that the class action encompasses only the issues that are truly common to the class." Baby Neal, 43 F.3d at 63 (citing Fed. R. Civ. P. 23(c)(4)).

In Bob Evans, the court concluded typicality was not satisfied because "[p]laintiff's factual claims do not share the core salient facts with class members of compliant facilities and are not sufficiently aligned that Plaintiff's claims may be considered typical." 2015 U.S. Dist. LEXIS 36905, at *28. The court noted that the differing applicable law complicated matters by further distinguishing one facility from another. Id. The court was not convinced that the broad range of claims could be resolved "in one strike" due to the "highly individualized analysis of each store's parking lot." Id. at *29. Again, however, in Bob Evans, the court was deciding a motion for certification not a motion to strike, and the court relied upon factual differences in the record to

16

support its conclusions. Given the procedural posture of the case, although plaintiff will likely face a challenging certification stage, this is not one of those "rare" cases where class allegations should be stricken before discovery can commence. See Merino v. Wells Fargo & Co., No. 16-cv-7840, 2017 U.S. Dist. LEXIS 143628, at *15 (D.N.J. Sept. 6, 2017) (rejecting arguments on motion to strike class allegations that "beg[] an unanswered question" because "no discovery has been exchanged, and the[] argument seems to presuppose what discovery shows (or doesn't show)").

The linchpin to all of Aldi's arguments are facts that Aldi believes to be true (and may turn out to be true), but the arguments are premature.[3] See Merino, No. 16-cv-7840, 2017 U.S. Dist. LEXIS 143628, at *15 (collecting decisions for proposition that a majority of courts in that district deny motions to strike as premature).

### D. Rule 23(a)(4) Adequacy Analysis

Rule 23(a)(4), adequacy of representation, requires that the named plaintiff "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). Examination into the adequacy of the representative class member focuses on two inquiries: the qualifications of counsel to represent the class, and any conflict of interest between named party representative (here, plaintiff) and the class they seek to represent. Trunzo v. CitiMortgage, No. 2:11-cv-01124, 2018 U.S. Dist. LEXIS 19625, at *25 (W.D. Pa. Feb. 7, 2018) (citing In re Warfarin Sodium Antitrust Litig., 391 F.3d 516, 532 (3d Cir. 2004)). Aldi focuses on the latter, arguing that plaintiff's claims

---

[3] "Other courts have denied motions to strike class allegations as premature when made before the plaintiffs have moved for certification." Wright & Miller, supra, § 13837.
> Based on the text of Rule 12(f), it seems that this latter approach is more appropriate: class allegations, even if ultimately found insufficient for certification purposes, are neither an insufficient defense, nor are they of such a scurrilous nature as to prejudice a defendant between the filing of the complaint and the plaintiffs' motion for class certification.

Id.

will conflict with those of other putative class members who had different experiences or different injuries (if injuries, at all).

Aldi repeats its commonality and typicality argument, advocating that because plaintiff's claims are so "antagonistic to those of absent class members," plaintiff cannot adequately represent the class. (ECF No. 17, at 13.) This argument is better suited for typicality and commonality challenges, because the "conflict" that Aldi identifies is the lack of symmetry between claims and not, necessarily, competing interests. See <u>Dewey v. Volkswagen Aktiengesellschaft</u>, 681 F.3d 170, 184 (3d Cir. 2012). Although it may be that putative class members have competing interests, conflicts that are "unduly speculative" do not defeat the adequacy requirement, even at the certification stage. <u>See</u> <u>Nat'l Veterans Legal Servs. Program v. United States</u>, 235 F. Supp. 3d 32, 41 (D.D.C. 2017) ("[C]onflicts will not defeat the adequacy requirement if they are speculative or hypothetical."). It is impossible to glean from the amended class complaint the extent to which plaintiff's individual claim may or may not conflict with other putative class members and whether that conflict will prevent plaintiff from adequately representing the class.

### IV. <u>Conclusion</u>

The amended class action sufficiently alleges class allegations. The motion to dismiss and/or strike class allegations, ECF No. 16, will be denied without prejudice to Aldi reasserting its arguments at certification. An appropriate order will be entered.

BY THE COURT,

Dated: November 28, 2018

/s/ JOY FLOWERS CONTI
Joy Flowers Conti
Chief United States District Court Judge